**IN THE COUNTY COURT OF**
**THE EIGHTEENTH JUDICIAL CIRCUIT**
**IN AND FOR BREVARD COUNTY, FLORIDA**

Case No:

05-2026-CC-024161-XXCC-BC

DAVID TOM,

Plaintiff

v.

Empower Brokerage, Inc.

Defendant

## COMPLAINT AND REQUEST FOR JURY TRIAL

1.Plaintiff, DAVID TOM ("Tom"), brings this action under federal law - the Federal Telephone Consumer Protection Act, 47 U.S.C. § 227(c)(5) ("TCPA").

2.This action is also brought under state law - the Florida Telephone Solicitation Act ("FTSA") Fla. Stat. § 501.059 as amended by Senate Bill No. 1120 (effective July 1, 2021).

3.This action is brought against Empower Brokerage, Inc., (a Texas corporation hereafter "EMPOWER") and alleges based on personal knowledge and information and belief, as follows:

## INTRODUCTION

4.As the Supreme Court has explained, Americans passionately disagree about many things. The American people are largely united in their disdain for telemarketing calls. The Federal Trade Commission and Federal Communications Commission both

Case # 05-2026-CC-024161-XXCC-BC
Document Page # 3
*41164756*

receive a staggering number of complaints about telemarketers each year. The States likewise field a constant barrage of complaints. For nearly 30 years, representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the "TCPA", generally prohibits telemarketing to cell phones and home phones. Barr v. Am. Ass'n of Political Consultants, 140 S. Ct. 2335, 2343 (2020).

5.Plaintiff brings this action against Defendants for violations of the TCPA, 47 U.S.C. § 227(c)(5), and its implementing regulations, 47 C.F.R § 64.1200 as well as violations of Florida Statutes § 501.059, the Florida Telephone Solicitation Act ("FTSA") as amended by Senate Bill No. 1120 (effective July 1, 2021).

6.This case involves a telemarketing campaign that benefits Defendant despite not having the required consent to contact Plaintiff, despite not having an existing business relationship with Plaintiff, and by Defendants / agents working on behalf of Defendant in failing to immediately identify a true first and last name/company name/beneficiary of such marketing in violation of FTSA and using a spoofed name/caller ID information transmittal in violation of FTSA as well as violations of TCPA.

**JURISDICTION & VENUE**

7.This court has subject matter over this action for BOTH Federal and State Claims. Federal claims are pursuant to 47 U.S.C. § 227(c)(5) which reads:

*(3) PRIVATE RIGHT OF ACTION. —A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity*

> *in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State — (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation, (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or (C) both such actions. It shall be an affirmative defense in any action brought under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection. If the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.*

8.This court has jurisdiction over Plaintiff's state law claims under the FTSA. Such claims arise out of the same set of factual allegations as Plaintiff's TCPA claims in this action.

9.With specific regard to federal question claims relating to the Telephone Consumer Protection Act (47 U.S.C. § 227 et seq) – Justice Ginsburg during her service on the U.S. Supreme Court wrote for a unanimous court in *Mims v. Arrow Financial Services, LLC* in 2012 finding that such claims may proceed in state or federal courts as state and federal courts have concurrent jurisdiction in private rights of action.

10.Therefore, this court has jurisdiction over Defendants because this suit arises out of and relates to Defendants having made or caused to be made telephonic sales calls without the requisite prior express written consent in violation of the TCPA and FTSA and specifically targeted a Brevard County, Florida Telephone number which was answered by Plaintiff while physically within Brevard County, Florida.

## PARTIES AND FACTUAL BACKGROUND

11.At all times material hereto, Plaintiff is a resident of the State of Florida, is and was a resident of Brevard County, Florida.

12.At all times material hereto, Defendant Empower is located in Texas and registered in Texas.

13.Tom maintains telephone numbers registered on the Federal do not call list database since June 28, 2003. A true and correct copy of a verified registrations with the federal registry is attached hereto and incorporated herein by reference as **Plaintiff's Exhibit "A".**

14.Tom is and at all times relevant hereto, was an individual and a "called party" as defined by Fla. Stat. § 501.059(1)(a) in that he was the regular user of the telephone number that received Defendant's telephonic sales call.

## THEORY OF LIABILITY

15.Plaintiff receives a large quantity of illegally made automated calls from overseas call centers on a daily basis.

16.These calls are pitching insurance of all varieties, roofing, solar panels, erectile dysfunction medication, offers to sell or buy property, mortgage refinancing,

extended auto warranties, and countless other products and services he has no interest whatsoever in purchasing.

17.The purpose of such calls is for the overseas callers to generate viable leads that they sell to companies based in the United States so that both parties may financially benefit.

18.Plaintiff has been called over the years by many parties that fail to identify a true name or company, and when asked for such information hang up or they pass on fictious information as part of their marketing campaign in order to escape liability because they made a call to Plaintiff's DNC registered line.

19.Some of the more sophisticated call centers make calls to numbers registered on the Federal Do Not Call List – and terminate the call as soon as they realize they have potential liability with a known telemarketing litigant.

20.They also terminate the call after attempting to connect the call to their lead buyer, who rejects any inbound lead from a Do Not Call List registered number with their own internal controls.

21.Because these calls are made from spoofed/fake phone numbers, fake names and are subsequently disconnected, there is no practical way to affirmatively identify or connect the illegal calls to a responsible party.

22.These practices are by nature, unfair and deceptive – as the called party is unable to positively ascertain who they are doing business with, until after they have done business. It is the commercial equivalent of being set up by a friend on a blind date,

without even being asking if it was okay to be set up, much less to be set up on a blind date.

23. The old proverb states – "If you can't beat them, join them" and as a direct result of such evasive telemarketing firms, Plaintiff established an alternative telephone number not registered on the Federal Do Not Call List and gives such alternative number to a caller.

24. This practice is a direct result of calls made to a DNC registered number which cannot successfully connect to an identifiable, responsible party. Plaintiff is unable to discover their identity otherwise.

25. This alternative number is used for the purpose of identifying parties involved with/responsible for violations of TCPA and FTSA and with the very occasional purpose of selling random household goods online on Facebook Marketplace or Craigslist.

26. Said differently, the only way to get Plaintiff's non-DNC registered alternative number – is to call Plaintiff's DNC registered number to try and sell him something (usually unsuccessfully) or if Plaintiff was trying to sell some random junk he has probably been hoarding too long in his garage.

27. Given the remaining largesse of random junk Plaintiff has in his garage, it can be reasonably ascertained that the call made in this case were not to assist Plaintiff's garage space reclamation goals, but to sell Plaintiff some insurance.

28. Plaintiff alleges that a lead generator had to call his DNC registered number at least twice in the past 12 months as a prerequisite to making a claim pursuant to 47 U.S.C.

§ 227(c)(5) and on at least two instances failed to connect to a licensed insurance salesperson due to their liability evasion practices.

29.During a call within the 4-year statute of TCPA limitations - Plaintiff asked the calling party to call the alternative number, the alternative number was called via an automated system with AI generated voices, fake names, spoofed numbers, all in violation of FTSA.

30.Plaintiff maintains an alternative number with the service area code 321. That number was called on 12-7-2025 at approximately 1402HRS bearing a caller ID displaying SATCOM 321-745-3297 and a few moments later at 1407HRS from "COCOA FL(321) 212-7786".

31. Said differently, the overseas call center was attempting to simulate the appearance of a local call with their falsified caller ID information – as the call was not from the local company SATCOM DIRECT, but rather an overseas call center using fake American-style names offering updated Medicare A&B Coverage for 2026 on account of the end of open enrollment season.

32.Information was collected from Plaintiff for the purposes of lead prequalification.

33.The overseas caller on their initial call asked if the party they had reached was "David Tom". It stands to reason that indicates they have called the same number before and acquired and input such information into their lead management system, then went on to place the call on hold and set up a subsequent transfer to a voicemail box / extension that did not pickup.

34.While on this call, the call center dropped off.

35.Plaintiff was then called back from another number and the calling party immediately apologized for the disconnection. They went on to explain that that it was the last day of open enrollment season and all the licensed agents in my area were busy.

36.The call center took a few moments to regroup and then connected Plaintiff with a Domeka Parker[1] with Empower Brokerage.

37.The overseas call center provided a warm transfer, the overseas call center introduced the Plaintiff to Parker and declared their agent ID and then told her to take over the call.

38.Parker began the reading of the Medicare call script and she explained she's living in South Carolina, works with Empower Brokerage and this call would be recorded, etc. etc.

39.Plaintiff asked her for the website for Empower Brokerage and she said it's the one with the big globe and the arrow over it. While on the phone, plaintiff did an internet search for Empower, and went on to describe the website and logo and Parker confirmed the website that was found was the correct one.

40.Plaintiff then asked for her National Producer Number/License Number whereupon the overseas call center listening in on the call that provided the warm lead terminated the connection just as Parker read the first three digits of her NPN.

41.While it is highly unlikely that a Texas based insurance broker hired an overseas call center in Pakistan or Bangladesh to robocall people in central Florida asking them if

[1] This is Plaintiff's best attempt to try and phonetically spell out the name of the caller. It is probably not 100% correct, but is the best effort given the lack of response from Defendant.

they want a free no cost no obligation evaluation of Medicare 2026 A&B coverage, it is highly likely that a disingenuous marketing company came along and offered brokers all over the nation amazing Medicare Part A&B leads and pitched them on the potential to be connected to a huge pipeline of potential customers just waiting to engage coverage with licensed agents.

42.The initial call at 1402PM was made by an automated system or automated AI/artificial voice offering updated Medicare coverage and did not identify Empower, or anyone specifically.

43.The AI/artificial voice was driven by an automated dialing system that generated a spoofed caller ID/false originating number in violation of FTSA, did not identify a true first name, company name, or any identifiable information as required by FTSA.

44.In fact, not only was not a true first name or company name displayed – the name of a local technology company was displayed, making the transmittal of the caller ID nothing more than a false flag.

45.The AI/artificial voice asked several prequalification questions and stated that the call would be switched to a benefits specialist. The call was robotically transferred to a call center operator with a very thick overseas accent who did not identify a last name, company name or caller ID as required by FTSA.

46.Plaintiff was asked asked prequalification questions just like the AI system did, and then went on to state that the call would be transferred to the local licensed agent in the state.

47.The overseas call center then went on to state that the call would be connected to the licensed agent, but before the call transfers – due to quality assurance purposes, the call transfer would override any state or federal do not call list the number would be on.

48.Said differently, the call center knows that they are violating telemarketing laws, and to protect themselves – they ask the called party to override the law, as a condition of transfer to the licensed agent. This attempt to discharge liability from their known illegal practices is violative of (FDUTPA). If the called party does not consent, the call terminates. Plaintiff agreed to the transfer to identify the calling party.

49.After the call was connected with Parker/Empower, Plaintiff sent an email to Empower's CEO and compliance team requesting an explanation as to their telephone marketing campaign and requested their do not call Policy.

50.The compliance team included Plaintiff on all internal correspondence with Empower's CEO asking if any response was warranted.

51.Empower did not formally respond to Plaintiff's questions, nor provide the do not call policy.

52.Plaintiff alleges that Empower is liable with regard to TCPA liability for such marketing activities conducted on their behalf with this direct, personal participation.

53.Said differently, overseas call centers are not calling Florida residents asking to pitch Medicare coverage out of the kindness of their hearts. They are doing so to get paid per warm transfer completed with brokerages such as Empower.

54.For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995). In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

55.The FCC and TCPA further hold that an individual working for any of the entities upon whom behalf calls that violate the TCPA are made can be held individually and personally liable for said calls.

56.The FCC has instructed that parties such as Defendant may not avoid liability by outsourcing telemarketing to third parties, or any other fictitious parties who contacted the Plaintiff on behalf of Defendant.[2]

57.Defendant is liable for the acts of its agents, telemarketing vendors, and marketing partners.

---

[2][A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."
*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (cleaned up).

58. These entities acted with actual authority, apparent authority, ratification, or a combination of such on behalf of Defendant, to benefit Defendant.

59. Defendant knowingly accepted the benefits of the telemarketing campaigns conducted on its behalf.

60. Defendant is therefore responsible for the unlawful telemarketing campaign conducted through: a) employees, b) agents, c) marketing vendors, and d) third-party telemarketing companies.

61. These entities acted with: a) actual authority, b) apparent authority, or c) ratification. Defendant is therefore liable for telemarketing conducted by its agents.

62. The calls made to Plaintiff by the lead vendor are noncompliant with multiple provisions of FTSA - Fla. Stat. § 501.059 with regard to the display of accurate caller ID information, true first and last name disclosures, business name disclosure, et al.

63. The lead provider calling engaged in the display of fraudulent caller ID information and connects Plaintiff with a person who has a thick accent which is typical of an overseas call center.

64. Defendant financially benefits from this illegal telemarketing campaign when subsidized Medicare Part A and Part B healthcare coverage is bound and underwritten as the private insurance carriers are paid by the federal government.

65. Defendant is liable for these violative actions of their agent under the following theories of vicarious liability, actual authority, apparent authority or ratification.

66. Defendant and their lead generation party are, and at all times relevant hereto meet the definition of a "telephone solicitor" as defined by Fla. Stat. § 501.059(f).

67. Allegations of liability for federal DNC/TCPA violations for calls made to phone numbers not registered on the Do Not Call List survive a defense Motion to Dismiss as long as the complaint includes sufficient allegations to support a reasonable inference that the unidentified callers, who allegedly violated the TCPA and the FTSA worked for the Defendant. [3]

68. In this matter, the calls made to Plaintiff's DNC number with unsuccessful attempts to connect to a license agent/identify a responsible party that led to Plaintiff giving out the alternative number to discover a responsible party meets such plausible inference standard.

69. Calls made to Plaintiff's DNC registered Florida number incur DNC and FTSA liability.

70. Calls made to Plaintiff's alternative NON-DNC number support a plausible inference that they were made with information acquired by calling Plaintiff's DNC number and still retain FTSA liability.

71. Plaintiff has requested Defendants do not call policy via email and as of this filing has not received a reply.

72. Recent federal courts have found that a a private right of action exists to enforce 47 CFR Section 64.1601(e). *See Dobronski v. SelectQuote 2025 WL 900439 (E.D. Mich March 25, 2025).*

---

[3] As found by Judge Steven Merryday in an order denying Defendant's Motion to Dismiss, Document #42 Tom v. Forbes & York Insurance LLC et al Middle District of Florida 8:24-cv-01320 (2025)

73.47 CFR 64.1601 provides that anyone engaging in telemarketing must transmit either a CPN or ANI, and the name of the telemarketer.

74.Plaintiff has extensive experience with 100+ illegal telephone calls a day, each bearing a caller ID of a different third business as a false flag, a geographic location or the most popular of the bunch "UNAVAILABLE".

75.In Plaintiff's experience, the overseas call centers that make these calls largely do not comply with 47 CFR 64.1601 – for the simple reason that if they're using a falsified number, there would be no reason to transmit a true name.

76.Plaintiff requests the option to amend this complaint to include additional requests for damages, injunctive relief, and any other such relief as may be allowable under law if more violations of law are evaluated in the discovery phase of this action.

77.Due to the inability to affirmatively identify the overseas call center/marketing company that sold Defendant such a lead and Defendant's unwillingness to disclose such information and resolve this matter, Plaintiff is left with no choice but to resolve these issues through litigation and seeks damages as follows:

**COUNT I - TCPA VIOLATIONS**

78.Plaintiff re-alleges and re-adopts paragraphs 1 through 77 of this Complaint as if fully set forth herein.

79.The foregoing actions of each Defendant constitute illegal action against Plaintiff in violation of TCPA. Tom as of July 28, 2003, is protected under the laws of the TCPA.

80.Plaintiff was injured due to Defendant's violation of TCPA.

81.Plaintiff is entitled to relief as a result of each Defendant's actions.

82. **WHEREFORE,** Plaintiff requests:

a. Compensatory damages allowable at law from EACH Defendant, in the amount of $500 for two calls to Plaintiff's DNC line;

Compensatory damages allowable at law from EACH Defendant, in the amount of $500 for failure to provide a Do Not Call Policy upon demand;

b. A finding all calls were both knowing and willful and warrant a finding favoring treble damages under TCPA, in the amount of $1,500 for EACH Defendant and $1,500 for knowing and willfully failing to provide to Plaintiff upon Plaintiff's demand their Do Not Call Policy;

c. A finding that 47 CFR 64.1601 allows for recovery of damages, in the amount of $500 for such violation, and $1,500 for knowing and willful violation and that such actions warrant an award of $1,500 for each defendant;

d. Prejudgment interest on all monetary recovery obtained;

e. All filing costs and attorney's fees incurred in prosecuting these claims; and

f. For such further relief as the Court deems just and equitable.

g. An injunction restraining continued violation of TCPA;

Defendant Empower; Total Damages, Count I: $7,500.00

Total Damages Count I: $7,500

**<u>COUNT II - FTSA VIOLATIONS</u>**

83. Plaintiff re-alleges and re-adopts paragraphs 1 through 77 of this Complaint as if fully set forth herein.

84. The foregoing actions of Defendants constitute illegal action against Plaintiff in violation of FTSA. Tom as of July 1, 2021, is protected under the laws of the FTSA.

85. Plaintiff was injured due to Defendants violations of FTSA.

86. Plaintiff is entitled to relief as a result of Defendants actions.

87. **WHEREFORE,** Plaintiff requests:

a. Compensatory damages allowable at law from Defendant, in the amount of $500 against EACH Defendant for violation of each element of FTSA;

b. A finding that at least three calls – two made to a DNC registered line and at least one to a non-DNC registered line are violative of FTSA in that Plaintiff was called via an automated system; 3 calls at $500 each and treble damages for knowing and willful violations of FTSA totaling $4,500

c. A finding that such calls failed to comply with the regulatory elements of FTSA, such as, the automated/artificial voice's failure to immediately identify a true first and last name, the subsequent switching to a human who also did not identify a true first and last name, for 3 calls at $500 each and treble damages for knowing and willful violations of FTSA totaling $9,000.

d. A finding that such calls failed to immediately identify the company or party represented / direct beneficiary of such telemarketing, 3 calls at $500 each and treble damages for knowing and willful violations of FTSA totaling $4,500.

e. A finding that such calls are violative of FTSA in that Tom was called by a spoofed number; 3 calls at $500 each and treble damages for knowing and willful violations of FTSA totaling $4,500.;

f. Prejudgment interest on all monetary recovery obtained;

g. All filing costs and attorney's fees incurred in prosecuting these claims; an

h. For such further relief as the Court deems just and equitable.

i. An injunction restraining continued violation of FTSA;

j. Defendant Empower; Total Damages, Count II: $22,500

## COUNT III - FDUTPA VIOLATIONS

88. Plaintiff re-alleges and re-adopts paragraphs 1 through 77 of this Complaint as if fully set forth herein.

89. The foregoing actions of each Defendant constitute illegal action against Plaintiff in violation of FDUTPA.

90. Plaintiff was injured due to each Defendant's actions relating to their business operations, practices and telemarketing, and incurred wasted time when trying to resolve the issues with them, research their lead vendors, and expressed anger and frustration at the false information presented to Plaintiff on the phone and in writing.

91. Time is money, and elevated blood pressure and anger as a result of each Defendant actions incur liability to which Plaintiff is entitled to relief.

92. **WHEREFORE,** Plaintiff requests:

a. Personal injury related to anger/aggravation with the matter at bar, which are difficult to value;

b. Monetary damages under FDUTPA for time spent investigating the calls and communicating in futility with Defendant in an attempt to investigate the illegal calls;

c. Damages from Defendant in the amount of $1,500;

d. Prejudgment interest on all monetary recovery obtained;

e. All filing costs and attorney's fees incurred in prosecuting these claims; and

f. For such further relief as the Court deems just and equitable.

g. An injunction restraining continued violation of FDUTPA;

Defendant Empower; Total Damages, Count III: $15,00.00

**SUMMARY**

93.Plaintiff hereby requests monetary damages from Defendants jointly and severally as follows:

TCPA Claims, $7,500

FTSA Claims, $22,500

FDUTPA Claims, $1,500

Total Damages Claimed: $31,500

**REQUEST FOR A JURY TRIAL**

94.Plaintiff hereby requests a jury trial on all issues so triable.

Dated: 3/30/26, Respectfully Submitted,

David Tom
For Plaintiff, David Tom - Pro Se
1058 Herne Ave
Palm Bay, Florida 32907
321-725-9212
david.m.tom@gmail.com

Gmail

David Tom <david.m.tom@gmail.com>

---

**National Do Not Call Registry - Your Registration Is Confirmed**
1 message

---

**Verify@donotcall.gov** <Verify@donotcall.gov> Tue, May 24, 2022 at 7:22 PM
To: david.m.tom@gmail.com

Thank you for registering your phone number with the National Do Not Call Registry. You successfully registered your phone number ending in 0760 on June 28, 2003. Most telemarketers will be required to stop calling you 31 days from your registration date.

Visit https://www.donotcall.gov to register another number or file a complaint against someone violating the Registry.

******************************************************************************************************************

Please do not reply to this message as it is from an unattended mailbox. Any replies to this email will not be responded to or forwarded. This service is used for outgoing emails only and cannot respond to inquiries.

PLAINTIFF'S EXHIBIT
"A"

Gmail

**David Tom <david.m.tom@gmail.com>**

---

## National Do Not Call Registry - Your Registration Is Confirmed

1 message

---

**Verify@donotcall.gov** <Verify@donotcall.gov> Thu, Oct 13, 2022 at 1:39 AM
To: david.m.tom@gmail.com

Thank you for registering your phone number with the National Do Not Call Registry. You successfully registered your phone number ending in 9212 on June 28, 2003. Most telemarketers will be required to stop calling you 31 days from your registration date.

Visit https://www.donotcall.gov to register another number or file a complaint against someone violating the Registry.

**************************************************************************************************************************************

Please do not reply to this message as it is from an unattended mailbox. Any replies to this email will not be responded to or forwarded. This service is used for outgoing emails only and cannot respond to inquiries.

PLAINTIFF'S EXHIBIT
"A"