AUG 11 2026 PM1:27
FILED - USDC - FLMD - ORL

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

DAVID TOM,
Plaintiff

v. Case No. 6:26-CV-01035-JSS-LHP

EMPOWER BROKERAGE, INC,

Defendant

---

# PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

## 1. INTRODUCTION

Defendant EMPOWER BROKERAGE, INC's motion to dismiss must be denied because the Plaintiff has pled sufficient facts to demonstrate Defendant's liability for the calls at issue. Regardless of the type of liability, whether actual authority, apparent authority, ratification, or a combination of such on behalf of Defendant – telephonic sales calls were made to pitch insurance sales, by Defendant's so called "independent agent" (Doc. 8 ¶¶ Pg 2, footnote 1). Specifically, Plaintiff has pled that he received multiple calls to his numbers from various call centers on a daily basis (Doc. 1-1, ¶¶ 15). Defendant claims, at the motion to dismiss stage, that it had absolutely nothing to do with the calls Plaintiff received, despite Plaintiff receiving two calls and connecting to "Parker"," a "licensed agent" with "Empower Brokerage," which is the name of the Defendant. At the pleadings stage, such allegations are plainly sufficient to give rise to an inference of liability, including Defendant's vicarious liability for calls which connected to Plaintiff.

As so many other courts have done in other TCPA cases involving vicarious liability (or liability via actual authority, apparent authority, ratification, or a combination of such) and unlawful telemarketing, this case should be allowed to proceed to discovery

## 2. Background

The Complaint in this matter was filed on April 2, 2026 against the moving Defendant Empower. (ECF No. 1). After transferring this matter to the Middle District of Florida, Defendant filed an amended motion to dismiss in which it abandoned its motion on jurisdictional grounds but rather attempts a 12(b)(6) challenge on the basis that the Plaintiff has inadequately pled the Defendant's connection to the calls / written an improper shotgun pleading laden with conclusory, vague and immaterial facts.

This response follows, in which Plaintiff shows why he has stated a prima facie case for violations of the TCPA that must be permitted to proceed to discovery, including third party discovery on Defendant's agent and telephone provider, to better ascertain what happened and pinpoint the exact number of calls are at issue, and to better ascertain the liability associated with same.

## 3. Legal Standard

The legal standard for a motion to dismiss under Rule 12(b)(6) is well established before this Court. Under Rule 12(b)(6), a court may dismiss a complaint that fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rather than require detailed pleadings, the Rules demand only a "short and plain statement of the claim showing that the pleader is entitled to relief, in order to give defendant fair notice of what the claim is and the grounds upon which it

rests." See, e.g., *Wampler v. Sw. Bell Tel. Co.*, 597 F.3d 741, 744 (5th Cir. 2010) (cleaned up). The requirement that a plaintiff "show" that he is entitled to relief means that a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (cleaned up).

In determining whether a claim is plausible, the court must "draw on its judicial experience and common sense." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786–87 (3d Cir. 2016). After identifying elements to set forth a claim and removing conclusory allegations, the Court must accept all well-pled factual allegations as true and determine if they give rise to relief. *Id.* A complaint may be dismissed only where it appears that there are not "enough facts to state a claim that is plausible on its face," not merely because the defendant proffers some contrary facts. Twombly, 550 U.S. at 570.

## 4. ARGUMENT

### *A. Plaintiff pleads sufficient facts, including spatial and temporal proximity, allowing this Court to draw the logical inference that Defendant has an agent associated with their company which connected to Plaintiff on multiple telephone calls*

With regard to Defendant's Argument – as partially described above, the Court's analysis must begin and end with whether or not the Plaintiff has plausibly alleged the Defendant's involvement in the calls with sufficient specificity to give rise to the inference of direct, vicarious, or other actionable liability. Plaintiff has done so because he has pled facts, including spatial and temporal proximity, as well as information obtained from his caller ID which references the times, and the caller ID names and telephone numbers displayed, which sufficiently prove at the pleadings stage that Defendant's agents made calls to Plaintiff, which

Defendant then used for its benefit in attempting to sell the Plaintiff insurance. (Compl. ¶ 30-31.).

The Plaintiff has clearly alleged that Empower is liable for the conduct at issue via Empower's agent and has made allegations that support the fact that the calls that were made on Empower's behalf encompass a telemarketing campaign which utilizes false caller ID's and false names and then terminated upon asking for the license number for Empower's agent. (Compl. ¶ 30-39). It should also be noted that Empower has acknowledged in this litigation, the existence of an "independent broker" with a last name of Parker. This partially acts as self-proving towards Plaintiff's allegations, since he was connected to an insurance agent with the last name of Parker in order to be sold insurance.

How else would Plaintiff know the name of an affiliate of Empower located in South Carolina, if he was not connected to them via a telephone call? Plaintiff's complaint indicates Plaintiff was called by an insurance salesperson over the phone claiming to be with Empower, and Defendant's MTD acknowledges that Parker is an "independent broker", and simultaneously alleges a lack of legal connection to same.

*B. The Complaint Fails to State a Claim for Relief Under the TCPA.*

Defendant unjustifiably leaps to the conclusion that, because the Plaintiff was called by a call center which demanded that Plaintiff override state or federal do not call protections as a condition of transfer, that somehow this agreeing to the transfer – negates any such liability on the part of the Defendant. (ECF #8, ¶ 30-31.).

Additionally, Defendant makes a recital outlining federal law under 47 U.S.C. § 227(b) and states the reasons to which the complaint should be dismissed as to failure to state a claim under same.

However, Plaintiff's claims are not related to 47 U.S.C. § 227(b) (artificial or prerecorded voice calls) but rather are related to 47 U.S.C. § 227(c) – which handles live calls.

Defendant's MTD presents a defense of 47 U.S.C. § 227(b) but not to Plaintiff's claims as they relate to 47 U.S.C. § 227(c).

Additionally, there is no "affirmative identification" requirement or even an identification requirement whatsoever in the TCPA. Were that the case, any bad actor (as here) could simply call people incessantly using fake names and caller IDs, only identify themselves when about to sell the called party something, and disclaim responsibility for the other calls, despite having placed them, and despite other indicia evidencing that the calls originated from the same place.

Said differently, when Plaintiff is called by an overseas agent, and connected to a party stating they work with "Empower Brokerage" and reads their website and a description of their logo being a globe with a big arrow pointing to the right, it stands to reason that the correct party that Plaintiff needs to sue is the Empower Brokerage with the logo matching her descriptor.

Based on the facts pled in the notice-pleading of the Plaintiff's complaint, as further bolstered by the confirmation of the agent being in the network of Defendant in Defendant's MTD, it is fair for this Court to infer that Defendant is liable for the conduct alleged to permit this matter to proceed to discovery.

Moreover, this Court should not hold that a defendant had no involvement and is not liable for a call. The Plaintiff has pled more than adequate facts demonstrating that such a relationship exists, thus permitting the Plaintiff to be entitled to discovery on this point and into the universe of calls placed to him. Telephone records do not lie, and a subpoena to Defendant's agent and their telephone company will ultimately set the record straight as to which calls the Plaintiff received, from whom and identify the relationship with the Defendant.

Neither the Defendant's general denials here nor citation to off-base case law suffice to show that there is some question as to whether or not Defendant may be liable for at the calling conduct alleged. The Defendant, in essence, adopts in its motion the classic "I didn't do it" defense, but styles it instead as an attack on the Plaintiff's pleading. This Court cannot credit the Defendant's simple denial of involvement, particularly because the Defendant's very own contentions themselves are contradictory.

Moreover, even if that was the standard (which it is not), it doesn't matter that the callers used spoofed caller IDs and fake names, nor do differences in call outcomes at all matter for pleadings purposes. The calls were evidently placed by an overseas agent and connected Plaintiff to an agent of Defendant.

Rule 12(b)(6) is not an appropriate device for testing the truth of what is asserted in the complaint or for determining whether the plaintiff has any evidence to back up what is in the complaint. *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 511 (2002). However, that's precisely what the Defendant attempts to do here, making a red-herring argument that the Plaintiff has failed to state a claim because he has allegedly not pled sufficient facts demonstrating liability. But that's a "red herring" that begs the question "who did, then?" and begs the question as to how and whom made the calls and how Plaintiff interacted with Defendant's employees or as the Defendant refers to them "independent brokers". It seems that when the agent is generating commissions, they are agents of Defendant, but when they are in litigation they are "independent brokers". *See Consol. Grain & Barge, Inc. v. Anny,* No. CIV.A. 11-2204, 2013 WL 486687, at *6 (E.D. La. Feb. 6, 2013). Of course, the answer here is boring and simple: Defendant or agents working on behalf of Defendant's agents made sure to use false names and caller ID's when conducting an illegal telemarketing campaign. This was done to avoid the ill will arising from

the Defendant being directly associated with an illegal telemarketing campaign and to provide plausible deniability (as here) when the source of the illegal calls is thereafter identified.

Requiring a TCPA plaintiff to allege more than basic facts giving rise to liability, such as requiring the entity be disclosed by name at the outset of an illegal telemarketing call or pleading intricate details linking calls, which were explicitly designed to be as difficult to trace, as the Defendant may seem to require, would eviscerate the TCPA's protection and would simply allow defendants to run rampant with all manner of anonymous and unidentified calls. Indeed, although identification of a caller is a legal requirement, neither Defendant, nor the vast majority of illegal telemarketers abide by it and instead use fake, generic names on the initial sales pitch because disclosing their true identity at the outset would cause bad will for their brand and generate a multitude of public consumer complaints. In litigation that affirmatively identifies them as the bad actors, like here, they then play dumb and claim that they have no connection with such falsely, and illegally, named entities and callers.

Other courts have rejected nearly identical tactics. For example, in *Stemke v. Marc Jones Constr., LLC,* No. 5:21-CV-274-30PRL, 2021 WL 4340424, at *2–3 (M.D. Fla. Sept. 23, 2021), the MDFL stated in a case on all fours with this one:

> Sunpro's motion to dismiss goes beyond the pleading to challenge the merits of the alleged facts. Indeed, the crux of Sunpro's motion questions Plaintiff's allegations that Sunpro placed the subject calls.
>
> For example, Sunpro argues that Plaintiff fails to "support" a plausible inference that Sunpro is directly or vicariously liable for the calls Plaintiff received because she does not allege facts that associate Sunpro to the calls allegedly at issue. But a review of the Amended Complaint belies this argument—Plaintiff alleges several times that she or her attorneys confirmed that Sunpro placed the subject calls. Plaintiff even includes the phone numbers and the dates she received the calls. To the extent Sunpro disputes that it directly placed the calls, Sunpro may take discovery on this matter and argue the issue at the dispositive motion stage.

Plaintiff cannot state that he pled the same complaint as in re *Sunpro* but identically plead within his initial compliant the caller ID's, dates, and times of the calls made to him that were connected to agent of Defendant (Compl. ¶ 30-39).

Taking all factual inferences in the Plaintiff's favor, as the Court must do now, the Plaintiff's allegations are sufficient. As Judge St. Eve, prior to being appointed to the Seventh Circuit Court of Appeals, held in a TCPA case denying a similar motion to dismiss:

> Sempris does not dispute that Quality initiated four calls to Toney in December 2012, but contends that Toney "cannot plausibly allege that the three unanswered calls she purportedly received were initiated by Quality for the purpose of marketing Sempris's Budget Savers membership program, because Toney does not allege--and cannot allege--that she has any personal knowledge of what the content of those calls would have been." . . . Sempris submits that Quality "just as easily could have been calling Toney to market the goods or services of another company it contracts with, for the exclusive purpose of confirming Toney's Stompeez order, or for a different purpose altogether" and that "Toney's assertion that that Quality made the three unanswered calls for the purpose of marketing Budget Savers is nothing more than rank speculation."
>
> The court disagrees. Toney has alleged that she received and answered a call from Quality in which the caller tried to sell her a Budget Savers membership the day after she received three unanswered calls from Quality. The content and timing of the fourth call allows the court to draw a reasonable inference that Quality made the first three calls to market Sempris's services.

*Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 746 (N.D. Ill. 2014) (cleaned up).

The same reasonable inference can be made here, as Plaintiff received a variety of calls that market Defendant's services and has pled them accordingly in his complaint.

The Defendant's standard provides a perverse incentive for an overseas call center to conceal their identity by making it impossible for any plaintiff to prove a claim against the

Defendant at the pleadings stage based on a lack of information and evidence. Luckily for consumers who receive unwanted calls, this is not the standard. *Abramson v. Josco Energy USA, LLC,* No. 2:21-cv-1322, 2022 U.S. Dist. LEXIS 237792, at *6 (W.D. Pa. Aug. 1, 2022) ("Defendant might dispute those facts, but as now alleged, they go beyond formulaically reciting the elements of Plaintiff's cause of action, and the Court must take them as true at this early stage in the litigation.").

Discovery will also permit the Plaintiff to uncover any additional third parties which may have been involved in the calls and argue as to the respective liability between themselves and Defendant. At the very least, this Court should nevertheless conclude that the facts pled here give rise to the inference of some vicarious or some agency relationship and permit discovery. *Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187, 1199 (M.D. Tenn. 2017) ("Cunningham has investigated the parties extensively, but inevitably some aspects of their relationships will only come to light in discovery."). The District of Maryland denied a similar motion in a TCPA case in *Jones v. Mut. of Omaha Ins. Co.,* Civil Action No. ELH-22-905, 2022 U.S. Dist. LEXIS 203313 (D. Md. Nov. 7, 2022) (cleaned up), holding:

> As noted, pursuant to Rule 12(b)(6), Mutual of Omaha contends that plaintiff fails to state a claim because she does not plausibly allege that defendant is either directly or vicariously liable for the calls at issue. Although Mutual of Omaha would not be directly liable for the calls, it may be vicariously liable if an agency relationship existed between the defendant and the third party. At this juncture, Mutual of Omaha's Motion turns on whether plaintiff has adequately alleged facts sufficient to support a claim of vicarious liability. Plaintiff has made a prima facie showing of an agency relationship based on actual authority . . . plaintiff has alleged that she received calls from an unidentified third-party telemarketer hired to sell branded products of another company who had control over the telemarketer's practices with respect to selling its products. Specifically, Jones alleges that the third party "was required to promote Mutual of Omaha's products[.]" Plaintiff also alleges that during the "solicitation", Mutual of Omaha's insurance services "were promoted." Moreover, she was then transferred to Eric Chambers, who identified himself as an employee of Mutual of Omaha. Id. ¶ 26. . . . .

> At the motion to dismiss stage, plaintiff need only make a prima facie showing of an agency relationship. Therefore, at this stage of the proceedings, Jones need not demonstrate that Mutual of Omaha actually controlled the manner and means of the telemarketing campaign; rather, evidence of Mutual of Omaha's "'right to control' the campaign will suffice." Viewing the allegations in the light most favorable to plaintiff, Jones has sufficiently alleged that Mutual of Omaha is vicariously liable based on an agency theory.

*Bryant v. Udell & Assocs.* likewise provides little solace to the Defendant. There, the plaintiff received calls from an individual identifying themselves as calling from "Senior Life" and who then transferred the call to Mutual of Omaha. *Bryant v. Byron Udell & Assocs. Inc.*, No. 123CV00414AJTLRV, 2023 WL 5180351, at *1 (E.D. Va. Aug. 11, 2023). After discovery, Court granted a 12(b)(1) motion to dismiss as to defendant AccuQuote because the only evidence that AccuQuote placed the calls were conclusory allegations that they did so in the complaint, specifically that, "During discovery in this action, Mutual of Omaha has revealed that AccuQuote, or a vendor they retained, made th[e] pre-recorded call [to Bryant]." *Id.* at *3. This being the "extent of Plaintiff's allegations against AccuQuote," which itself left the possibility that another vendor placed the calls, Court dismissed the case. *Id.* Not so here, where the Plaintiff's claims are based on calls made to Plaintiff, and live transferred to Defendant's agent.

Although history often repeats itself, more often than repeating – it rhymes. A TCPA claim based on 47 U.S.C. § 227(c) – claims relating to calls to alternative numbers survives a motion to dismiss, as found in *Tom v. Forbes and York Insurance LLC*, MDFL 8:24-cv-01320-SDM-SPF, where an overseas call center called Plaintiff's alternative number and a 227(c) complaint was made based on said calls because calls were made to Plaintiff's regular DNC number but were not able to be connected due to a litigator firewall. Although not precisely the same in nature, this instant action – featuring telemarketing calls to benefit the business of an insurance brokerage, and then denying liability – are fundamentally similar.

*C. The Complaint Fails to State a Claim for Relief Under the FTSA.*

Speaking broadly, as to FTSA and the claims made under FTSA by way of 28 U.S.C. § 1367 Supplemental Jurisdiction, Plaintiff's FTSA are much clearer than Defendant's Motion to Dismiss makes them out to be. Broadly, FTSA prohibits a number of violative activities. Broadly, FTSA (F.S. 501.059(8)), prohibits the use of an automated system for the selection and dialing of numbers, false caller ID name and number, etc. There is also a requirement that the caller ID displayed must connect the call recipient back to the solicitor or business who made the solicitation.

F.S. 501.059(2) also mandates the true first and last names and the business that is doing the soliciting to be identified immediately upon making contact by telephone.

FTSA maintains a private right of action. In Plaintiff's original complaint, he alleges violations of this nature with specificity, regarding the caller ID requirements, caller identity and business identity requirements, etc. (Compl. ¶ 42-48.).

Plaintiff acknowledges that perhaps the claims as pled are not a model of clarity, but are sufficient for the purposes of explaining and conceptualizing FTSA liability towards Defendant in that an agent called stating they were with "Empower Brokerage" and they are to whom this instant action is directed towards.

Due to the stringent requirements of the overseas call centers – they demand that a called party agree to a transfer of the call "even if their number is on any state or federal do not call list" – this is an absurd construct that bad actors use to continue to do violative things. One cannot perform illegal activities, and then claim with impunity that they were given approval to do such illegal activities after the fact.

If a brick were thrown through a homeowner's window with a note attached which read "BY READING THIS MESSAGE, YOU WAIVE ALL CRIMINAL CHARGES AGAINST THE THROWER OF THIS BRICK FOR BREAKING YOUR WINDOW" – such an argument would fail in a criminal proceeding as a viable defense. Agreeing and consenting to the transfer of the call is a prerequisite to identifying a proper Defendant, and not a waiver of Plaintiff's rights under FTSA or TCPA. Feigning interest and agreeing to the transfer for the purpose of identification of a defendant has been an established practice in TCPA, because if one did not agree to the transfer even if the number was on a state or federal do not call list – there would be no transfer, and no identifiable defendant, and no clue who the caller was – because of the pervasive nature of the fake caller ID's and fake names, this effectively gives the calling parties a Harry Potter-esque Invisibility Cloak.

What is occurring in this argument is what Plaintiff often describes to judges and attorneys as the "TCPA Plaintiff's Dilemma". For instance:

If the phone is not answered, the calling party cannot be identified due to the false caller ID, inability to callback that number, and an automated system being used that conceals their identity.

If the phone is answered and the called party refuses to answer questions or go along with the telemarketer, there is no way to identify the calling party due to the pervasive false caller ID's and automated dialing systems.

If the phone is answered and the called party answers 100% of the questions asked to establish their identity and connect with the US based customer paying them, the called party is accused of engaging actively with the caller, to which their TCPA/FTSA claims should be dismissed because of the indication of interest/waiver of liability as a condition of the transfer.

There is no clear or good outcome to any of these situations from a Plaintiff's perspective.

However - faced with the prospect of getting no information or getting some information – a called party must agree to these "waiver of liability" monologues to get connected to anywhere, otherwise the calls would all be disconnected and the identity of the callers would remain unknown and no legal action could be taken against the illegal activity.

*D. The Complaint Fails to State a Claim for Relief Under FDUTPA*

Plaintiff requests voluntary dismissal of claims under FTUTPA without prejudice.

**5. CONCLUSION**

Plaintiff requests this Court deny Defendant's motion to dismiss in its entirety. Or, in the alternative, to the extent that the Court finds that additional questions remain, it should permit the Plaintiff to amend to correct the deficiencies or permit discovery as necessary and reserve other determinations properly the subject of the jury. Should this Court make a finding of no triable/factual issues with regard to Plaintiff's 227(c) claims, Plaintiff requests leave of this Court to amend his complaint to reflect FTSA liability and FTSA claims only so that a motion to remand this action back to Brevard County Courts may accompany such amended complaint and send this instant action to a more appropriate venue where the FTSA issues may be heard and tried.

8/5/26

David Tom
Plaintiff Pro Se
1058 Herne Avenue
Palm Bay, FL 32907
david.m.tom@gmail.com
321-725-9212

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 5, 2026, I filed the foregoing with the Clerk of the Court via US Mail, and that a true and correct copy was served to Counsel for EMPOWER BROKERAGE, INC at jsbar@bergersingerman.com, mlamoureaux@bergersingerman.com, DRT@bergersingerman.com, DRT@ecf.inforuptcy.com, iparry@bergersingerman.com, lknox@bergersingerman.com, DRT@bergersingerman.com, DRT@ecf.inforuptcy.com